JUDGE PRESKA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08 CV 01333

OSWALD WILSON,

    Plaintiff,

-against-

AMERICAN BROADCASTING CO., INC.,
ABC CO, INC., DISNEY ENTERPRISES, INC.,
THE WALT DISNEY COMPANY,
MICHAEL ZDYRKO, CHARLES ZANLUNGHI,
WILLIAM TRACY, BRENDAN BURKE,
ROBERT SCHLES and
SANDY RANJATTAN,

    Defendants

COMPLAINT

ECF CASE

Dkt. No. 08 cv 1333 (LAP)

RECEIVED
FEB 11 2008
U.S.D.C. S.D.N.Y.

Plaintiff, by his attorney, Lennox S. Hinds Esq., complaining of the acts of defendants, alleges as follows:

## JURISDICTION

1. This is an action to redress discrimination based upon race and national origin, and based upon reprisal for opposition to racial and national origin discrimination. This Court has subject matter jurisdiction under 28 U.S.C. § 1343, to redress violations of civil rights and upon information and belief, under 28 U.S.C. § 1332, based upon the complete diversity of citizenship of Plaintiff and all Defendants in an action in which more than seventy-five thousand dollars is in controversy. This Court has supplemental jurisdiction over Plaintiff's claims based upon New York State and New York City law under 28 U.S.C. § 1367.

## VENUE

2. Venue is laid in the Southern District of New York, where the claims arose.

## PARTIES

3. Plaintiff, OSWALD WILSON, is an African-American citizen of the United States and a citizen and resident of the State of New Jersey. He is a naturalized United States citizen, of Jamaican national origin.

4. Defendant AMERICAN BROADCASTING CO., INC., ("ABC") is and at all times mentioned herein has been a corporation organized under the laws of Delaware, with its principal place of business in New York. At all times mentioned herein, ABC has been an employer of more than five-hundred persons within the meaning of 42 USC § 2000e.

5. Defendant ABC CO., INC., is and at all times mentioned herein has been a corporation organized under the laws of Delaware, with its principal place of business in New York. Upon information and belief, ABC CO., INC. is a subsidiary of Defendant AMERICAN BROADCASTING CO., INC., At all times mentioned herein, ABC CO, INC. has been an employer of more than five-hundred persons within the meaning of 42 USC § 2000e.

6. Defendant DISNEY ENTERPRISES, INC. is and at all times mentioned herein has been a corporation organized under the laws of Delaware, with its principal place of business in California. At all times mentioned herein, DISNEY ENTERPRISES has been an employer of more than five-hundred persons within the meaning of 42 USC § 2000e.

7  Defendant WALT DISNEY COMPANY, INC. is and at all times mentioned herein has been a corporation organized under the laws of Delaware, with its principal place of business in California. At all times mentioned herein, WALT DISNEY COMPANY, INC. has been an employer of more than five-hundred persons within the meaning of 42 USC § 2000e.

8. Defendants MICHAEL ZDYRKO, CHARLES ZANLUNGHI, WILLIAM TRACY, ROBERT SCHLES, BRENDAN BURKE and SANDY RANJATAN at all times mentioned herein are and have been employees and agents of Defendants ABC, ABC CO, INC., DISNEY ENTERPRISES, and/or WALT DISNEY COMPANY, INC. ("Defendant employers") acting within the scope of their employment. Upon information and belief, each of these Defendants are citizens and residents of the State of New York.

## FACTS

9. In February, 2004, Plaintiff hung a New York Post article honoring Black History Month that his son had given him on his equipment rack located at the 125 West End Avenue Engineering Maintenance Shop, where he was stationed and assigned to work as an employee of Defendant employers.

10. Throughout February, 2004 and into early March, 2004, Plaintiff was forced to endure racially charged comments and epithets by his immediate supervisors/managers in particular, Defendant Zanlunghi. For instance, in early March, Defendant Zanlunghi directed Plaintiff to remove the New York Post article from his equipment rack. Defendant Zanlunghi went on to comment that "Black History Month should be changed to White Aryan Nation Month."

11. A week later, in March, 2004, Plaintiff saw a black doll dangling by its neck in a Hangman's noose hanging from the drop ceiling near his equipment rack at the 125 West End Avenue ENG Maintenance Shop.

12. Plaintiff immediately notified his direct manager, Defendant Schles, of the noose and informed Defendant Schles that such a hateful display was incredibly offensive to him as an African-American man.

13. Rather than addressing the issue, Defendants, in April, 2004, transferred Plaintiff from the 125 West End Avenue location to the 147 Columbus Avenue Slant III Maintenance Shop.

14. Meanwhile, Defendants continued to permit the noose to be displayed at the 125 West End Avenue shop.

15. Plaintiff's work took him to the 125 West End Avenue location even after his transfer, and whenever he was there, he would observe that the noose had not been removed, although he repeatedly asked his managers that it be taken down.

16. In December, 2004, while Plaintiff was out of work on medical leave relating to a work-related injury he had sustained. Around that time, a series of violent storms had struck the Carribean. Plaintiff later learned that in response to a co-worker's inquiry as to where he was, Defendant Zanlunghi, in a derogatory tone, had commented that he was "probably walking barefoot somewhere in Jamaica to help repair the roof that blew off his family s hut."

17. In early February, 2005, when Plaintiff was transferred back to the 125 West End Avenue work site, he saw that the noose was still being displayed.

18. Plaintiff went to Defendant Schles to ask why the noose had not been removed. Defendant Schles told Plaintiff that since the noose was not in his immediate work area he shouldn't worry about it.

19. Upon reporting to the 125 West End Avenue plant for a meeting on October 10, 2006, Plaintiff saw that the noose was still hanging from the ceiling as it had been since March, 2004.

20. It was not until some time after October 11, 2006, over a year and a half after Plaintiff had first complained about the noose that Defendant Burke and/or Defendant Ranjattan caused the black doll in a noose to be removed, after Plaintiff complained to them about it at a meeting and they had learned from him that he had taken a photo of the offensive object to prove the discriminatory action.

21. In June, 2004, for the second time in about two months, Plaintiff was transferred again, this time to the 47 West 66th Street Slant II Maintenance Shop. In early February, 2005, when Plaintiff transferred back to the 125 West End Avenue work site.

22. On or about June 14, 2005, Plaintiff was transferred from 125 West End Avenue Maintenance Shop to the 147 Columbus Avenue Slant III Maintenance Shop. Plaintiff alone, among the engineers employed by Defendant employers was repeatedly transferred back and forth among the work sites.

23. From the time that he was assigned to the 147 Columbus Avenue Shop to the present, Plaintiff has not been provided with a work bench and test equipment rack, although all other engineers employed by Defendants have work benches.

24. In late July, 2007, another engineer at the 147 Columbus Avenue Shop resigned, and his workbench and equipment rack became available.

25. Plaintiff went out on vacation from August 6, 2007 to August 13, 2007. Upon his return, he found the workbench and test equipment rack missing, and learned that Defendant Zdyrko had ordered that they be removed.

26. In early October, 2006, Defendant Zanlunghi falsely accused Plaintiff of working on equipment that did not belong to ABC on company time, raising his voice in an unprofessional manner while making this accusation.

27. On October 9, 2006, Plaintiff was given a hard copy of an e-mail summoning him to a meeting with Defendant Zdyrko the next day at 125 West End Avenue. Plaintiff went to the site the next day at the appointed time, and found Zdyrko's office door locked. He called Zdyrko on his cell phone, and was told to come back to the 66 Street shop.

28. At the meeting, Plaintiff on October 10, 2006, Plaintiff was reprimanded by Defendant Zdyrko for allegedly excessive sick days. Defendant Zanlunghi jumped in with false accusations of spending what was alleged to be excessive time on the job speaking with another African-American employee, and a repetition of the false charge of working on non-ABC equipment on company time. Defendant Zdyrko then raised his voice and yelled that Plaintiff could not have co-workers visiting him in his work area. Plaintiff asked if this applied to all employees at the Slant III shop, and neither Defendant responded. When Plaintiff asked if he was being singled out, they both answered, "yes, yes."

29. Plaintiff felt sick and nauseous after the meeting, and asked Jose Urena for permission to go to the ABC medical office, where he explained the situation to the physician.

30. Plaintiff then contacted Defendant Brendan Burke, the Director of Employee Relations and made an appointment to see Burke the next day.

31. On October 11, 2007, Plaintiff met with Defendants Burke and Raqnjattan, and complained about the black doll hanging from a noose, the lack of a workbench, the transfers, and the discriminatory comments made by Defendants Zdyrko and Zanlunghi at the meeting the day before.

32. On January 23, 2007, Plaintiff was scheduled to arrive at work at 4:00 p.m. Defendant Zdyrko approached Plaintiff at about 12:15 p.m. at the jobsite, and in front of his co-workers, began yelling at him for coming in late.

33. When Defendant Zdyrko learned that Plaintiff had not been due in until later in the the afternoon, he called Plaintiff on the phone and acknowledged the error, but did not apologize to Plaintiff.

34. In February, 2007, Plaintiff met with Defendants Ranjattan and Defendant Tracy. He explained that his mistreatment on the job had caused him to develop a medical condition for which he was receiving treatment. He asked for a work schedule which would allow him to keep medical appointments every Tuesday afternoon. Tracy promised him this accommodation.

35. As instructed by Defendant Tracy, Plaintiff provided the ABC Medical office with a letter from his therapist concerning his need for this accommodation in scheduling his work time.

36. While initially, after providing the note from his therapist, Plaintiff was given a work schedule which accommodated this request, as he had been promised, after a few weeks he was given a schedule which required him to work on alternate Tuesday afternoons.

37. At the meeting with Defendants Ranjattan and Tracy, Plaintiff also mentioned that he did not have a work bench or test equipment rack.

38. As a result of the discriminatory treatment by Defendants, Plaintiff has been made to suffer physical and emotional pain and suffering and humiliation, and has been subjected to a hostile work environment which has interfered with his ability to perform his work.

39. On March 7, 2007, Plaintiff filed a complaint of discrimination with the New York State Division of Human Rights which, pursuant to a work-sharing agreement, accepted it on behalf of the United States Equal Employment Opportunity Commission, and filed the complaint as an EEOC charge.

40. On October 10, 2007, the New York State Division of Human Rights, at Plaintiff's request, issued an order dismissing the complaint for administrative convenience.

41. On November 14, 2007, the United States Equal Employment Opportunity Commission, at Plaintiff's request, issued a Right to Sue letter.

42. This action is timely commenced within ninety days of Plaintiff's receipt of the Right to Sue letter.

### As a First Cause of Action

43. The acts and failure to act of Defendant employers based upon Plaintiff's race, color, and national origin, and in reprisal for his opposition to discrimination violated Plaintiff's rights under the Equal Employment Opportunities Act of 1972, 42 U.S.C. § 2000e, et seq., giving rise to an action for the injuries caused thereby to Plaintiff.

### As a Second Cause of Action

44. Plaintiff repeats and realleges as if stated here in full ¶¶ 1-37 of this complaint.

45. The acts and failures to act of Defendants violated Plaintiff's rights secured by 42 U.S.C. §§ 1981 and 1981a, giving rise to an action for the injuries caused thereby to Plaintiff.

### As a Third Cause of Action

46. Plaintiff repeats and realleges as if stated here in full ¶¶ 1-37 of this complaint.

47. Each of the Defendants conspired with each of the other defendants to violate Plaintiff's rights based upon a racial animus against him, and based upon an animus against him for his opposition to racial discrimination.

48. Defendants are liable for their violation of Plaintiff's rights pursuant to 42 U.S.C. § 1985.

## As a Fourth Cause of Action

49. Plaintiff repeats and realleges as if stated here in full ¶¶ 1-37 of this COMPLAINT.

50. Defendant employers denied Plaintiff the right to take sick time without reprisal secured by the Family and Medical Leave Act, 29 U.S. C. § 2601 et seq., causing injuries for which these Defendants are liable.

## As a Fifth Cause of Action

51. Plaintiff repeats and realleges as if stated here in full ¶¶ 37 of this complaint.

52. Defendants violated Plaintiff's rights to be free of discrimination based upon race, color, national origin, and in reprisal for his opposition to discrimination, and aided one another in discriminating against Plaintiff, in violation of the New York State Human Rights Law, Executive Law § 296 et seq., giving rise to injuries for which Defendants are liable.

## As a Sixth Cause of Action

53. Plaintiff repeats and realleges as if stated here in full ¶¶ 1-37 of this complaint.

54. Defendants violated Plaintiff's rights to be free of discrimination based upon race, color, national origin, and in reprisal for his opposition to discrimination, and aided one another in discriminating against Plaintiff, in violation of the New York City Human Rights Law, N.Y.C. Administrative Code § 8-106 et seq., giving rise to injuries for which Defendants are liable.

As a Seventh Cause of Action

55. Plaintiff repeats and realleges as if stated here in full ¶¶ 1-37 of this complaint.

56. Plaintiff's illness constituted a disability within the meaning of the New York State York State Human Rights Law, New York State Executive Law § 292 (21).

57. The failure of Defendants to reasonably accommodate Plaintiff's request for a schedule which permitted him to keep his doctor's appointments on Tuesday afternoons constituted a discriminatory practice under New York State Executive Law § 296, causing injury for which Defendants are liable.

As an Eighth Cause of Action

58. Plaintiff repeats and realleges as if stated here in full ¶¶ 1-37 of this complaint.

59. Plaintiff's illness constituted a disability within the meaning of the New York City Human Rights Code, New York City Administrative Code § 8-102 (16).

60. The failure of Defendants to reasonably accommodate Plaintiff's request for a schedule which permitted him to keep his doctor's appointments on Tuesday afternoons constituted a discriminatory practice under New York City Administrative Code § 8-107 (16), causing injury for which Defendants are liable.

As a Ninth Cause of Action

61. Plaintiff repeats and realleges as if stated here in full ¶¶ 1-37 of this complaint.

62. Defendants' actions constituted an outrageous campaign of harassment of Plaintiff, causing him unbearable emotional distress and physical and mental pain and suffering.

63. Defendants are liable for the intentional infliction of emotional distress against Plaintiff, giving rise to injury for which Defendants are liable.

As a Tenth Cause of Action

64. Plaintiff repeats and realleges as if stated here in full ¶¶ 1-37 of this complaint.

65. Defendants' actions constituted the negligent infliction of emotional distress upon Plaintiff, causing him unbearable emotional distress and physical and mental pain and suffering, giving rise to injury for which Defendants are liable.

Wherefore, Plaintiff demands judgment against Defendant employers jointly and severally for the violation of his civil rights under 42 U.S.C. § 2000e, and 29 U.S.C. § 2601 et seq., for damages, and against all Defendants on his remaining causes of action, for compensatory and punitive damages, and injunctive relief against all defendants prohibiting them from engaging in discriminatory conduct and requiring them to reasonably accommodate his disability, together with reasonable attorneys' fees and costs and such further, other and different relief as this Court deems just in the premises.

Respectfully submitted,

*[signature]*

Lennox S. Hinds, Esq. (8196)
Stevens, Hinds, & White, P.C.
Attorneys for Plaintiff
116 W. 111 Street
New York, NY 10026
212 864 4445

## Jury Demand

Plaintiff hereby demands trial by jury of all claims triable by jury.

*[signature]*

Lennox S. Hinds, Esq.