UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------
OSWALD WILSON**.**

                                    Plaintiff,

            -against-

AMERICAN BROADCASTING CO., INC.,
ABC CO, INC., DISNEY ENTERPRISES, INC.,
THE WALT DISNEY COMPANY,                        Docket No. 08 cv 01333
MICHAEL ZDYRKO, CHARLES ZANLUNGHI,              (LAP)
WILLIAM TRACY, BRENDAN BURKE,
ROBERT SCHLES and
SANDY RANJATTAN.

                                    Defendants.

----------------------------------------------------------------------


# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PORTIONS OF THE COMPLAINT

# TABLE OF CONTENTS

COUNTER-STATEMENT OF THE CASE ..................................................................... 1

STATEMENT OF PROCEDURAL HISTORY................................................................ 2

LEGAL ARGUMENT ........................................................................................................ 3

I.    DEFENDANTS' MOVE TO DISMISS PLAINTIFF'S FIRST CAUSE OF
      ACTION UNDER TITLE VII AGAINST THE INDIVIDUAL DEFENDANTS
      IS MISAPPLIED ..................................................................................................... 3

II.   DEFENDANTS' MOVE TO DISMISS PLAINTIFF'S FOURTH CAUSE OF
      ACTION UNDER FMLA AGAINST THE INDIVIDUAL DEFENDANTS IS
      MISAPPLIED WITH THE EXCEPTION OF DEFENDANT TRACY ............... 3

III.  DEFENDANTS MOVE TO DISMISS BURKE, RANJATTAN AND TRACY
      ENTIRELY FROM THIS ACTION IS WITHOUT MERIT ................................. 5

IV.   DEFENDANTS' MOVE TO DISMISS PLAINTIFF'S TENTH CAUSE OF
      ACTION OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS
      PREEMPTED BY NEW YORK'S WORKERS' COMPENSATION LAW
      WRONGLY STATES THE LAW.......................................................................... 8

V.    PLAINTIFF IS AMENDING HIS COMPLAINT AS HE IS PERMITTED TO
      SO AS OF COURSE UNDER F.R. CIV. P. RULE 15 SINCE DEFENDANTS
      HAVE NOT ANSWERED .................................................................................... 10

CONCLUSION.............................................................................................................. 10

## TABLE OF AUTHORITIES

**Page**

### Cases

*Allen v. Denver Pub. Sch. Bd.,*
  928 F.2d 978 (10th Cir. 1991). ....................................................................... 5

*Black v. Coughlin,*
  76 F.3d 72 (2d Cir. 1996) ................................................................................ 6

*Brunelle v. Cyro Indus.,*
  225 F. Supp.2d 67 (D. Me. 2002) .................................................................... 5

*Carmody v. The City of New York,*
  Lexis 25308 (S.D.N.Y. 2006) .......................................................................... 6

*Conley v. Gibson,*
  355 U.S. 41 (1957) .......................................................................................... 8

*Hicks v. IBM,*
  44 F.Supp. 2d 593 (S.D.N.Y. 1999) ................................................................ 5

*Johnson v. A.P. Products, Ltd.,*
  934 F. Supp. 625 (S.D.N.Y. 1996) ................................................................... 4

*Keene v. Rinaldi,*
  127 F. Supp.2d 770 (M.D.N.C. 2000) ............................................................. 4

*Krimstock v. Kelly,*
  306 F.3d 40 (2d Cir. 2002) .............................................................................. 8

*Le Williamson v. Deluxe Financial Services Inc.,*
  No. 03-2538-KHV, LEXIS 15293 (D.Kan. July 6, 2005) ............................... 5

*Malaney v. El Al Israel Airlines,*
  LEXIS 1709 (S.D.N.Y. 2008) .......................................................................... 8

*Mandell v. The County Of Suffolk,*
  316 F.3d 368 (2d Cir. 2003) ............................................................................ 3

*Pasqualini v. Mortgageit, Inc.,*
  498 F. Supp. 2d 659 (N.Y.S.D. 2007) ............................................................. 3

*Shakur v. Selsky,*
  391 F.3d 106 (2d Cir. 2004) ............................................................................ 8

## TABLE OF AUTHORITIES
### (continued)

*Tomka v. Seiler Corp.,*
   66 F.3d 1295 (2d Cir. 1995)................................................................. 3, 8

*Torres v. Pisano,*
   116 F.3d 625 (2d Cir. 1997)................................................................. 9

*Whidbee v. Garzarelli Food Specialities, Inc.,*
   223 F.3d 62 (2d Cir. 2000)................................................................. 8

*Wrighten v. Glowski,*
   232 F.3d 119 (2d Cir. 2000)................................................................. 3

### Statutes

29 U.S. C. § 2601 ................................................................................. 2, 4

29 USCS § 2611 ................................................................................. 3

42 U.S.C. § 2000e ................................................................................. 2, 3

42 U.S.C. §§ 1981 ................................................................................. 2, 8, 10, 11

N.Y. Workers' Comp. Law § 29(6) ....................................................... 9

Plaintiff Wilson respectfully submits this memorandum of law in support of his opposition to Defendants' motion to dismiss portions of the Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## COUNTER-STATEMENT OF THE CASE

This is an action by Plaintiff Wilson to redress discrimination based upon race and national origin and based upon reprisal for opposition to racial and national origin discrimination. Plaintiff, who is Black, was harassed racially by a white manager for celebrating Black History Month by posting a New York Post's article in his workspace around February-March 2004. An offensive black doll with a hangman's noose around its neck appeared in a colleague's workspace in full public view, shortly thereafter. Despite immediate and repeated requests to his immediate supervisor Defendant Schles, no action was taken to remove the doll.

On the contrary, Plaintiff was subject to harassment and reprisals through constant transfers around to different work stations and loss of workbench and test equipment rack privileges, and verbal harassments from managers Zdyrko and Zanlunghi. It was not until after October 2006 when he complained to Human Resource Director Defendant Burke and Human Resource Manager Defendant Ranjattan and revealed to them that he had taken a photo of the offensive black doll hanging by a noose, were steps taken by Defendants Burke and Ranjattan to remove the doll. However, despite notice, they took no steps to remedy the reprisals that Plaintiff suffered in the transfers, lack of workbench or test equipment rack, and unreasonable work schedules that denied him medical accommodation.

1

Defendant Tracy, now Vice-President of ENG Day to Day Operations, was Director of ENG Day to Day Operations at the time of the alleged events and had supervisory duties over Managers in charge of Day to Day Operations, Defendants Schles, Zdyrko and Zanlunghi. In March 2004, he had knowledge that an offensive black doll with the hangman's noose was in public display from a work space in 125 West End Avenue Maintenance Shop. In February 2007, when Plaintiff approached him for medical accommodation, he only facilitated it for a few weeks, but thereafter, Plaintiff got a work schedule that allowed him to see his doctor only on alternate Tuesday afternoons instead of every Tuesday. As for the rest of Plaintiff's complaints of unfair and retaliatory treatments in the workplace, he took no action to affect any remedies for Plaintiff.

Plaintiff brought this Complaint to secure his rights under Equal Employment Opportunities Act of 1972, 42 U.S.C. § 2000e, et seq.,(Title VII), 42 U.S.C. §§ 1981 and 1981a, Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., and applicable New York State and City laws.

<u>STATEMENT OF PROCEDURAL HISTORY</u>

Plaintiff brought this action to redress discrimination based upon race and national origin and based upon reprisal for opposition to racial and national origin discrimination. In lieu of an answer, Defendants filed a pre-answer motion to dismiss certain portions of the Complaint.

This memorandum of law represents Plaintiff's opposition to said Defendants' motion to dismiss. And Plaintiff is appending his First Amended Complaint as Exhibit I

since he is permitted to so as of course under F.R. Civ. P. Rule 15 because defendants

have not answered.


<u>LEGAL ARGUMENT</u>

<u>Point I.  DEFENDANTS' MOVE TO DISMISS PLAINTIFF'S FIRST CAUSE OF
ACTION UNDER TITLE VII AGAINST THE INDIVIDUAL DEFENDANTS IS
MISAPPLIED.</u>

     In moving to dismiss Plaintiff's first cause of action, Defendants alleged that

Plaintiff has no cause of action against individual Defendant employees, Burke,

Ranjattan, Tracy, Zdyrko, Zanlunghi and Schles, under the Equal Employment

Opportunities Act of 1972, 42 U.S.C. § 2000e, et seq., ("Title VII").   Under Title VII of

the Civil Rights Act of 1964, <u>42 U.S.C.S. § 2000e et seq.</u>, individuals and individual

supervisors, and employer's agents are not subject to liability.  *Mandell v. The County Of*

*Suffolk*, 316 F.3d 368, (2d Cir. 2003); *Wrighten v. Glowski,* 232 F.3d 119 (2d Cir. 2000);

*Tomka v. Seiler Corp.,* 66 F.3d 1295 (2d Cir. 1995); *Pasqualini v. Mortgageit, Inc.,* 498

F. Supp. 2d 659 (N.Y.S.D. 2007)

     A close reading of Plaintiff's first cause of action establishes that Plaintiff

complained of "Defendant employers" meaning "The American Broadcasting

Companies, Inc.," and not the "individual Defendants."  Hence the motion to dismiss this

count with respect to the individual defendants is misapplied.


<u>Point II.  DEFENDANTS' MOVE TO DISMISS PLAINTIFF'S FOURTH CAUSE OF
ACTION UNDER FMLA AGAINST THE INDIVIDUAL DEFENDANTS IS
MISAPPLIED WITH THE EXCEPTION OF DEFENDANT TRACY.</u>

The Family and Medical Leave Act, ("FMLA") 29 USCS § 2611, defines an "employer"

as:

(A) In general. The term "employer"--
    (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
    (ii) includes--
      (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
      (II) any successor in interest of an employer;

Under the FMLA, a specific pleading is required to qualify a defendant as an employer. In Plaintiff's Complaint, he plead that he initially requested an accommodation to Defendants Tracy and Ranjattan in February 2007 (¶ 34). Defendant Tracy, at that time, was Director of ENGINGERING Day to Day Operations and instructed Plaintiff to provide the ABC medical office with a letter from his therapist concerning his need for accommodation in scheduling his work time (¶ 35). Plaintiff followed Tracy's instructions and received an initial accommodation as requested. However, after a few weeks, Plaintiff was given a schedule which only partially accommodated his medical leave ((¶ 36).

Clearly, a reasonable inference can be drawn that Defendant Tracy had the authority to approve or deny Plaintiff's FMLA request since he had promised Plaintiff to make said accommodation, after the initial request, and in fact did affect that accommodation. Thus, at this stage of the proceeding without discovery, Plaintiff has pled sufficient facts to establish a basis for liability under the FMLA as to Defendant Tracy.

As laid out in *Johnson v. A.P. Products, Ltd.,* 934 F. Supp. 625 (S.D.N.Y. 1996), the Family Medical Leave Act 29 U.S.C. § 2601 et seq., extends to all those who controlled in whole or in part a plaintiff's ability to take a leave of absence and return to

the plaintiff's position.  Indeed, the case law cited by Defendants in *Le Williamson v. Deluxe Financial Service,s Inc.,* No. 03-2538-KHV, LEXIS 15293 (D.Kan. July 6, 2005), *Brunelle v. Cyro Indus.,* 225 F. Supp.2d 67, 82 (D. Me. 2002) and *Keene v. Rinaldi,* 127 F. Supp.2d 770, 777-778 n.3 (M.D.N.C. 2000) supports Plaintiff's allegation that Defendant Tracy was no mere supervisory employee but a director who can control in whole or in part, Plaintiff's ability to take a leave of absence and return to Plaintiff's position.

Point III.  DEFENDANTS MOVE TO DISMISS BURKE, RANJATTAN AND TRACY ENTIRELY FROM THIS ACTION IS WITHOUT MERIT.

The issue here is whether Plaintiff has pled a cause of action to connect the actor with the discriminatory action."  *Allen v. Denver Pub. Sch. Bd.,* 928 F.2d 978 (10th Cir. 1991).  See also *Hicks v. IBM,* 44 F.Supp. 2d 593 (S.D.N.Y. 1999).

In his Complaint, Plaintiff pled that he met with Defendants Burke and Ranjattan on October 11, 2006, and complained about the black doll hanging from a noose, and that they caused the doll to be removed only after they had learned from him that he had taken a photo of the offensive object to prove the discriminatory action (Complaint ¶ 20).  In the same meeting, Plaintiff complained to them of the lack of a workbench, the transfers and the discriminatory comments made by Defendants Zdyrko and Zanlunghi, the day before (Complaint ¶ 31).

In his EEOC Complaint filed on March 7, 2007, Plaintiff alleged that Defendant Burke was the Director of Human Resource and that on January 19, 2007, he received a report that Defendants Burke and Ranjattan removed the black doll (EEOC Complaint ¶ ¶ 4, 5).  His EEOC Complaint also alleged retaliation on January 23, 2007 by a manager,

Defendant Zdryko, based on his filing of a complaint with the Human Resources Department in October 2007 (EEOC Complaint ¶ 6).

As for Defendant Tracy, Plaintiff alleged in his Complaint that in February 2007, he met with Defendants Tracy and Ranjattan.  Apart from requesting for medical accommodation, of which Defendant Tracy initially accommodated for a few weeks, Plaintiff "explained his mistreatment on the job" (Complaint ¶ 34) and "mentioned that he did have a work bench or test equipment rack" (Complaint ¶ 37).

*Carmody v. The City of New York,* Lexis 25308 (S.D.N.Y. 2006) is most instructive since it is a case involving a motion to dismiss where it states, in relevant parts:

> Section 1981 forbids discrimination with regard to the conditions of a contractual relationship ...  To state a claim against an individual pursuant to 42 U.S.C. § 1981 …, a plaintiff must set forth facts that establish the personal involvement of the individual in the alleged deprivation of civil rights.  ... Personal involvement can be demonstrated in any of the following ways: 1) defendant directly participated in the alleged wrongdoing, 2) defendant failed to remedy the wrong after being informed via a report or appeal, 3) defendant created a policy or custom under which unconstitutional acts occurred, or allowed the continuance of such policy, 4) defendant was grossly negligent in supervising subordinates who committed the illegal acts, or 5) defendants exhibited deliberate indifference by failing to act on information indicating unconstitutional acts were occurring. Merely holding a position of authority or supervision is not enough.  *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir. 1996).

In the case at bar, Plaintiff did not merely allege that Defendants Burke, Ranjattan and Tracy held positions of authority or supervision.  Rather the facts plead demonstrate that the black doll on the noose had been hanging from an open work space since March 2004, and it was only after Plaintiff had informed Defendants Burke and Ranjattan in October 2006, that he had taken a photograph of the offensive doll that they caused the doll to be removed in January 19, 2007 (about 3 years after the doll was first put up.)

Moreover, at the same meeting in October 2006, Plaintiff also informed Defendants of the reprisals against him, namely, the lack of a workbench, the transfers and the discriminatory comments made by Defendants Zdyrko and Zanlunghi. Notwithstanding, Defendants failed to take any steps to remedy these wrongs after being informed, and Plaintiff continued to be subject to retaliation by Defendant Zdryko on January 23, 2007. Hence, Plaintiff clearly establishes the personal involvement of Defendants Burke and Ranjattan at this stage of the proceeding in the alleged deprivation of Plaintiff's civil rights. They were on notice of the illegal acts that took place and failed to intervene to stop them.

As for Defendant Tracy, Plaintiff alleges that his personal involvement can be demonstrated via prong 2, prong 3 and/or prong 4 of the test in *Carmody,* enumerated above. Apart from a short-lived attempt to accommodate Plaintiff's medical leave, he also failed to remedy any of Plaintiff's complaints of discrimination and reprisals after being informed of them. It could be inferred from the Complaint that Defendant Tracy was grossly negligent in supervising his subordinates Defendants Schles, Zunlunghi and Zdryko who committed the illegal acts and/or he exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring – that information being published openly by a black doll hanging on a noose in a public work space for about three years before it was taken down. Defendant Tracy was on notice of the illegal acts that took place and failed to intervene to stop them.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the movant must establish that the plaintiff failed to "state a claim upon which relief can be granted." In ruling on a Rule 12(b)(6) motion, the court must construe all factual allegations in the

7

complaint in favor of the non-moving party.  See *Krimstock v. Kelly,* 306 F.3d 40, 47-48 (2d Cir. 2002).  A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Shakur v. Selsky,* 391 F.3d 106, 112 (2d Cir. 2004) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).  Therefore to defeat a motion to dismiss, whose purpose is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof, a plaintiff need not come forward with proof of its allegation, but he must, however, allege facts that taken as true constitute a claim.  Defendants, in the case at bar, have failed to meet their burden to show, that Plaintiff asserted no factual allegations of wrongdoings against Defendants Burke, Ranjattan and Tracy with the exception of broad conclusory allegations.

Defendants cite to *Whidbee v. Garzarelli Food Specialities, Inc.,* 223 F.3d 62 (2d Cir. 2000) to dismiss Defendants Burke, Ranjattan and Tracy with respect to violations of 42 U.S.C. § 1981, however, the standard or test embodied in *Whidbee* is not appropriate to our case since it is a case of summary judgment after full discovery.  Similarly, Defendants' citation of *Tomka v. Seiler Corp.,* 66 F.3d 1295 at 1317 (an individual cannot be held personally liable under the NYSHRL as an employer unless shown to have an ownership interest or the power to do more than carry out personnel decisions, or if he actually participates in the discriminatory conduct) is inappropriate since it is another case for summary judgment after full discovery.  The same can be said of Defendants' citation to *Malaney v. El Al Israel Airlines,* LEXIS 1709 (S.D.N.Y. 2008), a motion to dismiss case that was converted to summary judgment.  The instant case can also be distinguished from *Malaney* in that the *Malaney* Complaint fails to allege the

individual defendants' actual participation in the purported discriminatory conduct whereas Plaintiff in the instant case, has demonstrated Defendants Burke, Ranjattan and Tracy's "personal involvement" as laid out above.


POINT IV.  DEFENDANTS' MOVE TO DISMISS PLAINTIFF'S TENTH CAUSE OF ACTION OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS PREEMPTED BY NEW YORK'S WORKERS' COMPENSATION LAW WRONGLY STATES THE LAW.

Defendants' statement of the New York's Workers' Compensation Law is self-servingly incomplete. N.Y. Workers' Comp. Law § 29(6) provides that the right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee, or in case of death his dependents, when such employee is injured or killed by the negligence or wrong of another in the same employ.  However, it also states an exception to workers' compensation exclusivity which allows an employee to sue the employer if the employer committed an intentional tort or a co-worker committed an intentional tort at the employer's direction.

Defendants further cite to *Torres v. Pisano,* 116 F.3d 625 (2d Cir. 1997) in support of their assertion that Plaintiff's negligent infliction of emotional distress claim is preempted by N.Y. Workers' Compensation Law.  But the instant case is distinguishable from *Torres* in that since the *Torres* employee did not allege an intentional tort, the negligence claim was barred by the exclusive workers' compensation remedy.  However, in the case at bar, Plaintiff Wilson, in fact, alleged in his Ninth Cause of Action in the Complaint, that Defendants were liable for intentional infliction of emotional distress against him.  Therefore, N.Y. Workers' Comp. Law is not the sole and exclusive remedy

for plaintiff's claim of negligent infliction of emotional distress and Plaintiff's Tenth

Cause of Action in his Complaint should not be dismissed.


POINT V.  PLAINTIFF IS AMENDING HIS COMPLAINT AS HE IS PERMITTED TO SO AS OF COURSE UNDER F.R. CIV. P. RULE 15 SINCE DEFENDANTS HAVE NOT ANSWERED.

Under F.R. Civ. P. Rule 15(a)(1)(A), a pleading can be amended once as a matter

of course.  Plaintiff filed and served the Summons and Complaint on Defendants in this

Court.  Defendants have made a pre-answer motion to dismiss, invoking F.R. Civ. P.

Rule 12 (b)(6).  Because Defendants have not answered, Plaintiff is permitted to amend

the complaint as of right, and does so to plead the personal involvement of Defendants

Burke, Ranjattan and Tracy in violating 42 U.S.C. § 1981 provisions against Plaintiff.

Because Defendants have not answered, Plaintiff is amending the pleading as a

matter of course, so that Defendants' motion to dismiss is not to be granted if the

amended complaint states a claim, regardless of whether the claim is apparent on the face

of the pre-amended complaint.  See Exhibit 1, Plaintiff's First Amended Complaint.


CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court to rule on

Defendants' motion to dismiss with respect to Plaintiff's Complaint as follows:

- Dismiss as misapplied, Defendants' move to dismiss Plaintiff's First Cause of Action with respect to Title VII against the individual defendants;

- Dismiss as misapplied, Defendants' move to dismiss Plaintiff's Fourth Cause of Action under FMLA against the individual defendants with the exception of Defendant Tracy;

- Dismiss as without merit under 42 U.S.C. § 1981, Defendants' move to dismiss Defendants Burke, Ranjattan and Tracy;

- Dismiss as a matter of law, Defendants' move to dismiss Plaintiff's Tenth Cause of Action of negligent infliction of emotional distress as preempted by N.Y. Workers Comp. Law; and

- Grant Plaintiff's first amendment of his Complaint under F.R. Civ. P. 15 as a matter of course since Defendants have not answered.

Respectfully submitted,

By:     /s/Lennox Hinds
        Lennox S. Hinds (1696574)

        STEVENS, HINDS & WHITE, P.C.
        116 West, 111 Street
        New York, NY 10026
        (212) 864-4445
        *Attorneys for Plaintiff*

To:     Stephen P. Sonnenberg, Esq.
        Genevieve C. Nadeau, Esq.
        PAUL, HASTINGS, JANOFSKY, & WALKER LLP
        75 East 55 Street
        New York, NY 10022
        (212) 318-6000
        *Attorneys for Defendants*

EXHIBIT I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------

OSWALD WILSON**.**

                Plaintiff,

-against-

AMERICAN BROADCASTING CO., INC.,
MICHAEL ZDYRKO, CHARLES ZANLUNGHI,
WILLIAM TRACY, BRENDAN BURKE,
ROBERT SCHLES and
SANDY RANJATTAN.

                Defendants

              1ST AMENDED
              COMPLAINT

              Docket No. 08 cv 01333 (LAP)

-------------------------------------------------------------------------

Plaintiff, by his attorney, Lennox S. Hinds Esq., complaining of the acts of defendants, alleges as follows:

## JURISDICTION

1.   This is an action to redress discrimination based upon race and national origin, and based upon reprisal for opposition to racial and national origin discrimination.  This Court has subject matter jurisdiction under 28 U.S.C. § 1343, to redress violations of civil rights and upon information and belief, under 28 U.S.C. § 1332, based upon the complete diversity of citizenship of Plaintiff and all Defendants in an action in which more than seventy-five thousand dollars is in controversy.  This Court has supplemental jurisdiction over Plaintiff's claims based upon New York State and New York City law under 28 U. S. C. § 1367.

## VENUE

2.   Venue is laid in the Southern District of New York, where the claims arose.

PARTIES

3.  Plaintiff, OSWALD WILSON, is an African-American citizen of the United States and a citizen and resident of the State of New Jersey.  He is a naturalized United States citizen, of Jamaican national origin.

4.  Defendant AMERICAN BROADCASTING CO., INC., ("ABC") is and at all times mentioned herein has been a  corporation organized under the laws of Delaware, with its principal place of business in New York.  At all times mentioned herein, ABC has been an employer of more than five-hundred persons within the meaning of 42 USC § 2000e.

5.  Defendants MICHAEL ZDYRKO, CHARLES ZANLUNGHI, WILLIAM TRACY,
 ROBERT  SCHLES,  BRENDAN  BURKE  and  SANDY  RANJATAN  at  all  times mentioned herein are and have been employees and agents of Defendant ABC ("Defendant employer") acting within the scope of their employment.  Defendant TRACY had been Director of ENG Day to Day Operations since 2000.  He is presently Vice-President of ENG Day to Day Operations since 2007.  He supervises  Defendants SCHLES, ZDYRKO and ZANLUNGHI, who are managers to Plaintiff.  Defendant BURKE  is  Director  of  Human  Resources/Employees  Relations  and  Defendant RANJATTAN is Manager of Human Resources. Upon information and belief, these Defendants are citizens and residents of the State of New York.


FACTS

6.  In February, 2004, Plaintiff hung a New York Post article honoring Black History Month that his son had given him on his equipment rack located at the 125 West End Avenue Engineering Maintenance Shop, where he was stationed and assigned to work as an employee of Defendant employer.

7.  Throughout February, 2004 and into early March, 2004, Plaintiff was forced to

endure racially charged comments and epithets by his immediate supervisors/managers in particular, Defendant Zanlunghi. For instance, in early March, Defendant Zanlunghi directed Plaintiff to remove the New York Post article from his equipment rack. Defendant Zanlunghi went on to comment that "Black History Month should be changed to White Aryan Nation Month."

8.  Defendant Tracy knew of this incident with Defendant Zanlunghi.

9.  A week later, in March, 2004, Plaintiff saw a black doll dangling by its neck in a Hangman's noose hanging from the drop ceiling near his equipment rack at the 125 West End Avenue ENG Maintenance Shop.

10.   All managers and Director Tracy at 125 West End Avenue Engineering Maintenance Shop walked past the black doll in the Hangman's noose.

11.  Plaintiff immediately notified his direct manager, Defendant Schles, of the noose and informed Defendant Schles that such a hateful display was incredibly offensive to him as an African-American man.

12.   Rather than addressing the issue, Defendants, in April, 2004, transferred Plaintiff from the 125 West End Avenue location to the 147 Columbus Avenue Slant III Maintenance Shop.

13.  Meanwhile, Defendants continued to permit the noose to be displayed at the 125 West End Avenue shop.

14.  Plaintiff's work took him to the 125 West End Avenue location even after his transfer, and whenever he was there, he would observe that the noose had not been removed, although he repeatedly asked his managers that it be taken down.

15.   In December, 2004, while Plaintiff was out of work on medical leave relating to a work-related injury he had sustained.  Around that time, a series of violent storms had struck the Carribean. Plaintiff later learned that in response to a co-worker's inquiry as to where he was, Defendant Zanlunghi, in a derogatory tone, had commented that he

was "probably walking barefoot somewhere in Jamaica to help repair the roof that blew off his family s hut."

16.  In early February, 2005, when Plaintiff was transferred back to the 125 West End Avenue work site, he saw that the noose was still being displayed.

17.  Plaintiff went to Defendant Schles to ask why the noose had not been removed. Defendant Schles told Plaintiff that since the noose was not in his immediate work area he shouldn't worry about it.

18.  Upon reporting to the 125 West End Avenue plant for a meeting on October 10, 2006, Plaintiff saw that the noose was still hanging from the ceiling as it had been since March, 2004.

19.  It was not until some time after October 11, 2006, over two years and a half after Plaintiff had  first complained about the noose that Defendant Burke and Defendant Ranjattan caused the black doll in a noose to be removed, after Plaintiff complained to them about it at a meeting and they had learned from him that he had taken a photo of the offensive object to prove the discriminatory action.

20.  In June, 2004, for the second time in about two months, Plaintiff was transferred again, this time to the 47 West 66th Street Slant II Maintenance Shop.  In early February, 2005, when Plaintiff transferred back to the 125 West End Avenue work site.

21.  On or about  June 14, 2005, Plaintiff was transferred from 125 West End Avenue Maintenance Shop to the 147 Columbus Avenue Slant III Maintenance Shop. Plaintiff alone, among the engineers employed by Defendant employers was repeatedly transferred back and forth among the work sites.

22.  From the time that he was assigned to the 147 Columbus Avenue Shop to the present, Plaintiff has not been provided with a work bench and test equipment rack, although all other engineers employed by Defendants have work benches.

23.  In late July, 2007, another engineer at the 147 Columbus Avenue Shop resigned, and his workbench and equipment rack became available.

24   Plaintiff went out on vacation from August 6, 2007 to August 13, 2007.  Upon his return, he found the workbench and test equipment rack missing, and learned that Defendant Zdyrko had ordered that they be removed.

25.   In early October, 2006, Defendant  Zanlunghi falsely accused Plaintiff of working on equipment that did not belong to ABC on company time, raising his voice in an unprofessional manner while making this accusation.

26.   On October 9, 2006, Plaintiff was given a hard copy of an e-mail summoning him to a meeting with Defendant Zdyrko the next day at 125 West End Avenue.  Plaintiff went to the site the next day at the appointed time, and found Zdyrko's office door locked.  He called Zdyrko on his cell phone, and was told to come back to the 66 Street shop.

27.   At the meeting, Plaintiff on October 10, 2006, Plaintiff was reprimanded by Defendant Zdyrko for allegedly excessive sick days.  Defendant Zanlunghi jumped in with false accusations of spending what was alleged to be excessive time on the job speaking with another African-American employee, and a repetition of the false charge of working on non-ABC equipment on company time.  Defendant Zdyrko then raised his voice and yelled that Plaintiff could not have co-workers visiting him in his work area. Plaintiff asked if this applied to all employees at the Slant III shop, and neither Defendant responded.  When Plaintiff asked if he was being singled out, they both answered, "yes, yes."

28.   Plaintiff felt sick and nauseous after the meeting, and asked Jose Urena for permission to go to the ABC medical office, where he explained the situation to the physician.

29.   Plaintiff then contacted Defendant Brendan Burke, the Director of Employee Relations and made an appointment to see Burke the next day.

30.   On October 11, 2007, Plaintiff met with Defendants Burke and Ranjattan, and

complained about the black doll hanging from a noose, the lack of a workbench, the transfers, and the discriminatory comments made by Defendants Zdyrko and Zanlunghi at the meeting the day before.

31.   Apart from causing the doll to be removed, Defendants Burke and Ranjattan took no steps to remedy the other wrongs inflicted upon Plaintiff of which he complained about to them.

32.   On January 23, 2007, Plaintiff was scheduled to arrive at work at 4:00 p.m. Defendant Zdyrko approached Plaintiff at about 12:15 p.m. at the jobsite, and in front of his co-workers, began yelling at him for coming in late.

33.   When Defendant Zdyrko learned that Plaintiff had not been due in until later in the the afternoon, he called Plaintiff on the phone and acknowledged the error, but did not apologize to Plaintiff.

34.   In February, 2007, Plaintiff met with Defendants Ranjattan and Defendant Tracy. He explained that his mistreatment on the job had caused him to develop a medical condition for which he was receiving treatment.   He asked for a work schedule which would allow him to keep medical appointments every Tuesday afternoon.   Tracy promised him this accommodation.

35.   As instructed by Defendant Tracy, Plaintiff provided the ABC Medical office with a letter from his therapist concerning his need for this accommodation in scheduling his work time.

36.   While initially, after providing the note from his therapist, Plaintiff was given a work schedule which accommodated  this request, as he had been promised, after a few weeks he was given a schedule which required him to work on alternate Tuesday afternoons.

37.   At the meeting with Defendants Ranjattan and Tracy, Plaintiff also mentioned that he did not have a work bench or test equipment rack.

38.   Defendants Ranjattan and Tracy took no steps to remedy any of Plaintiff's complaints of discrimination and reprisals after being informed of them.

39.   As a result of the discriminatory treatment by Defendants, Plaintiff has been made to suffer physical and emotional pain and suffering and humiliation, and has been subjected to a hostile work environment which has interfered with his ability to perform his work.

40.   On March 7, 2007, Plaintiff filed a complaint of discrimination with the New York State Division of Human Rights which, pursuant to a work-sharing agreement, accepted it on behalf of the United States Equal Employment Opportunity Commission, and filed the complaint as an EEOC charge.

41.   On October 10, 2007, the New York State Division of Human Rights, at Plaintiff's request, issued an order dismissing the complaint for administrative convenience.

42.   On November 14, 2007, the United States Equal Employment Opportunity Commission, at Plaintiff's request, issued a Right to Sue letter.

43.  This action is timely commenced within ninety days of Plaintiff's receipt of the Right to Sue letter.

As a First Cause of Action

44.   The acts and failure to act of Defendant employer based upon Plaintiff's race, color, and national origin, and in reprisal for his opposition to discrimination violated Plaintiff's rights under the Equal Employment Opportunities Act of 1972, 42 U.S.C. § 2000e, et seq., giving rise to an action for the injuries caused thereby to Plaintiff.

As a Second Cause of Action

45.   Plaintiff repeats and realleges as if stated here in full ¶¶ 1-38 of this complaint.

46.   The acts and failures to act of Defendants violated Plaintiff's rights secured by 42 U.S.C. §§ 1981 and 1981a, giving rise to an action for the injuries caused thereby to Plaintiff.

### As a Third Cause of Action

47.   Plaintiff repeats and realleges as if stated here in full ¶¶ 1-38 of this complaint.

48.   Defendant employer and Defendant Tracy denied Plaintiff the right to take sick time without reprisal secured by the Family and Medical Leave Act, 29 U.S. C. § 2601 et seq., causing injuries for which these Defendants are liable.

### As a Fourth Cause of Action

49.   Plaintiff repeats and realleges as if stated here in full ¶¶ 1- 38 of this complaint.

50.   Defendants violated Plaintiff's rights to be free of discrimination based upon race, color, national origin, and in reprisal for his opposition to discrimination, and aided one another in discriminating against Plaintiff, in violation of the New York State Human Rights Law, Executive Law § 296 et seq., giving rise to injuries for which Defendants are liable.

### As a Fifth Cause of Action

51.   Plaintiff repeats and realleges as if stated here in full ¶¶ 1-38 of this complaint.

52.   Defendants violated Plaintiff's rights to be free of discrimination based upon race, color, national origin, and in reprisal for his opposition to discrimination, and aided one another in discriminating against Plaintiff, in violation of the New York City Human Rights Law, N.Y.C. Administrative Code § 8-106 et seq., giving rise to injuries for which Defendants are liable.

### As a Sixth Cause of Action

53.   Plaintiff repeats and realleges as if stated here in full ¶¶ 1-38 of this complaint.

54.   Plaintiff's illness constituted a disability within the meaning of the New York State York State Human Rights Law, New York  State Executive Law § 292 (21).

55.   The failure of Defendants to reasonably accommodate Plaintiff's request for a

schedule which permitted him to keep his doctor's appointments on Tuesday afternoons constituted a discriminatory practice under New York State Executive Law § 296, causing injury for which Defendants are liable.

### As an Seventh Cause of Action

56.   Plaintiff repeats and realleges as if stated here in full ¶¶ 1-38 of this complaint.

57.   Plaintiff's illness constituted a disability within the meaning of the New York City Human Rights Code, New York City Administrative Code § 8-102 (16).

58.   The failure of Defendants to reasonably accommodate Plaintiff's request for a schedule which permitted him to keep his doctor's appointments on Tuesday afternoons constituted a discriminatory practice under New York City Administrative Code § 8-107 (16), causing injury for which Defendants are liable.

### As a Eighth Cause of Action

59.   Plaintiff repeats and realleges as if stated here in full ¶¶ 1-38 of this complaint.

60.   Defendants' actions constituted an outrageous campaign of harassment of Plaintiff, causing him unbearable emotional distress and physical and mental pain and suffering.

61.   Defendants are liable for the intentional infliction of emotional distress against Plaintiff, giving rise to injury for which Defendants are liable.

### As a Ninth Cause of Action

62. Plaintiff repeats and realleges as if stated here in full ¶¶ 1-38 of this complaint.

63.   Defendants' actions constituted the negligent infliction of emotional distress upon Plaintiff, causing him unbearable emotional distress and physical and mental pain and suffering, giving rise to injury for which Defendants are liable.

**Wherefore,** Plaintiff demands judgment against Defendant employers jointly and severally for the violation of his civil rights under 42 U.S.C. § 2000e, and 29 U.S.C. § 2601 et seq., for damages, and against all Defendants on his remaining causes of action, for compensatory and punitive damages, and injunctive relief against all defendants prohibiting them from engaging in discriminatory conduct and requiring them to reasonably accommodate his disability, together with reasonable attorneys' fees and costs and such further, other and different relief as this Court deems just in the premises.

Respectfully submitted,

/s/ Lennox Hinds
Lennox S. Hinds, Esq.  (8196)
Stevens, Hinds, & White, P.C.
Attorneys for Plaintiff
116 W. 111 Street
New York, NY 10026
212 864 4445

Jury Demand

Plaintiff hereby demands trial by jury of all claims triable by jury.

/s/ Lennox Hinds
Lennox S. Hinds, Esq.

Lennox S. Hinds, Esq.
STEVENS, HINDS & WHITE, P.C.
116 West, 111 Street
New York, NY 10026
(212) 864-4445

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------

OSWALD WILSON**.**

Plaintiff,

-against-

AMERICAN BROADCASTING CO., INC.,
ABC CO, INC., DISNEY ENTERPRISES, INC.,
THE WALT DISNEY COMPANY,
MICHAEL ZDYRKO, CHARLES ZANLUNGHI,
WILLIAM TRACY, BRENDAN BURKE,
ROBERT SCHLES and
SANDY RANJATTAN.

Docket No. 08 cv 01333
(LAP)

**CERTIFICATION OF
SERVICE**

Defendants
---------------------------------------------------------------------

### CERTIFICATION OF SERVICE AS TO PLAINTIFF'S BRIEF
### IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The original of the within Plaintiff's Brief in Opposition to Defendants'

Motion to Dismiss Certain Portions of the Complaint with Exhibit I – Plaintiff's

First Amended Complaint, has been electronically filed with the United States

District Court, Southern District of New York.

On Tuesday, June 24, 2008, a true and correct copy of Plaintiff's Brief in

Opposition to Defendants' Motion to Dismiss Certain Portions of the Complaint

with Exhibit I – Plaintiff's First Amended Complaint, on behalf of Plaintiff, was

forwarded to:

      Stephen P. Sonnenberg, Esq.
      Genevieve C. Nadeau, Esq.
      PAUL, HASTINGS, JANOFSKY, & WALKER LLP
      75 East 55 Street
      New York, NY 10022
      *Attorneys for Defendants*

*I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.*

      Respectfully submitted:

      STEVENS, HINDS & WHITE, P.C.


      By:    /s/ Lennox Hinds
            Lennox S. Hinds

Dated: June 24, 2008